IN THE UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Johnny Harrison,** *et al.,* ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | Civil Action No. 1:05-CV-01789 (ESH) |
| ) | |
| **Freightliner LLC,** *et al.,* ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFFS' REQUEST FOR ADMISSIONS TO DEFENDANT LEACH,
WITH ACCOMPANYING INTERROGATORIES**

Pursuant to Fed. R. Civ. P. 36(a), the defendant Leach is requested to admit the following facts within thirty days, and to answer the attached interrogatories for any matter not admitted.

### DEFINITIONS

For the purposes of this request for admissions, the following terms apply:

a. "PTO" means the function on the Sterling/Leach vehicle that is the subject of this lawsuit that increases the engine speed when activated, in order to produce enough hydraulic pressure to operate the packing and loading functions on the vehicle. PTO also refers to the "speed up" circuit on the subject vehicle.

b. "Neutral Lockout" means the circuit that is designed to allow activation of the PTO function only when the transmission shifter in the vehicle is in the neutral position.

c. "Subject Vehicle" refers to the Leach/Sterling truck, VIN Number 49HAAEBV91HJ21747, Serial J21747, Leach packer, Beta, Serial Number 4432.

    d. "Electrical relay box" refers to the box on the passenger side of the subject vehicle where, among other things, the PTO and neutral lockout circuits were located.

## REQUESTS FOR ADMISSIONS

1. The vehicle that is the subject of this case has a Leach packer, Beta model, Serial Number 4432.

2. Leach designed and installed on the subject vehicle a PTO function which is designed to increase engine speed from idle to approximately 1700 RPM when the PTO function is activated.

3. The PTO function on the subject vehicle is designed to be automatically activated when the carrier/packer levers are engaged.

4. Leach designed and installed on the subject vehicle a "neutral lockout" circuit that was designed to allow activation of the PTO function only when the transmission shifter is in the neutral position.

5. Proper functioning of the "neutral lockout" circuit is important to safe operation of the subject vehicle.

6. When the subject vehicle was inspected after the Harrison accident, a Leach representative observed that the neutral lockout circuit was not operating properly on the subject vehicle.

7. At this inspection, a Leach representative determined that the reason the "neutral lockout" was not functioning on the subject vehicle was that the wires to terminal numbers 86 and 87 had been improperly reversed.

8. Leach was asked in discovery in this case to produce to the plaintiffs all electrical schematic diagrams showing the correct wiring of the PTO and "neutral lockout" circuits.

9. The diagrams provided by Leach that showed the wiring of the PTO and neutral lockout circuits were documents stamped as FSCOOO479 (See attached Exhibit A) and FSCOOO482 (Attached as Exhibit B).

10. Leach also published a "Alpha/Beta/Delta Service Manual over Serial Number 3500," excerpt attached as Exhibit C, which contains an electrical schematic for the neutral lockout and PTO circuits on page 9-57.

11. Leach also has an instructional workbook, excerpt attached as Exhibit D, that shows the "engine speed up circuits" on page 58 of the workbook.

12. The document FSC000479 does not accurately show the neutral lockout circuit for the subject vehicle.

13. The document FSC000482 does not accurately show the neutral lockout circuit in the subject vehicle.

14. The document FSC000482 shows an incorrect wire color code in the neutral lockout circuit for the subject vehicle.

15. The Leach service manual page 9-57 does not fully and accurately show the neutral lockout circuit.

16. Page 58 of the Leach instructional workbook does not fully and accurately show the correct wiring for the neutral lockout circuit.

17. The Leach instructional workbook page 58 shows an incorrect schematic and a wrong wire color for the neutral lockout circuit.

18. The document attached to this request as Exhibit E, which is also identified as Exhibit D.2.5 ASA composite schematic, correctly shows the wiring of the PTO (speed up) and neutral lockout (neutral relay) circuits on the subject vehicle as they were designed and constructed.

19. Leach has a duty to provide to its customers electrical schematics that correctly show the wiring and color coding for functions such as the neutral lockout.

20. None of the Leach documents provided to the owner of the subject vehicle correctly showed the wiring and color coding of the neutral lockout circuit.

21. A truck mechanic could not be expected to maintain the correct wiring for the neutral lockout circuit on the subject vehicle based on the diagrams provided by Leach with the vehicle.

22. Leach did not provide the D.C. Government service personnel any documents that correctly show the wiring and color coding of the neutral lockout on the subject vehicle.

23. The only documents available from Leach that describe the wiring of the neutral lockout circuit are FSC000479, FSC000482, the Leach service manual page 9-57 and the Leach instructional workbook page 58 (attached hereto as Exhibits A, B, C and D), plus two drawings identical to FSC000479 and FSC000482 which were produced in discovery as FSC000005 and FSC000473.

24. Based on the design and location of the relay box in the cab of the subject vehicle, it was foreseeable to Leach at the time it sold the vehicle to the D.C. Government that wires in the relay box could become loose and would need to be replaced in their correct positions for the vehicle's safety functions to work properly.

25. It would have been feasible for Leach at the time it sold the subject vehicle to have provided wiring for the PTO and neutral lockout circuits with a socketed assembly. In a socketed assembly the wires 86 and 87 could not physically have been reversed.

26. It would have been feasible for Leach at the time it sold the subject vehicle to have configured the neutral lockout circuit so that the neutral lockout function could never be disabled by misplaced wiring. For example, the neutral lockout switch could have been configured so that neutral equals power instead of the neutral equals ground function.

27. Leach had several feasible options available to it at the time it sold the subject vehicle to ensure that the neutral lockout function could not easily become disabled by maintenance error.

28. The disabled neutral lockout function was a likely contributing cause to the subject vehicle starting to roll forward when Johnny Harrison was standing behind it.

29. There were other feasible locations in the subject vehicle where the electrical relay box could have been located before it was sold to the D.C. government.

### FIRST ACCOMPANYING INTERROGATORY

If any of these Requests for Admissions is denied, in whole or in part, identify the request and give a complete description of all facts relied upon in making the denial, along with the names, current addresses, and telephone numbers of all persons having sufficient knowledge of each fact to be able to testify as a witness. Also, give a detailed description of the substance and content of all expert opinions relied upon in making the

denial, along with the names, professional qualifications, addresses, and telephone numbers of the persons rendering each opinion. Last, identify all documents and tangible items relied upon in making the denial. If any part of this interrogatory is answered on information and belief, state for the specific information believed, the source of the information, when and in what manner the information was obtained, and why it is reasonable to believe the information is true.

## SECOND ACCOMPANYING INTERROGATORY

If any of these Requests for Admissions is denied on the ground of lack of information or knowledge, identify the request and give a detailed chronological account of every effort by you or your attorneys to inquire into the subject matter of the request, including the date of each effort, the person making each effort, the substance of each effort, and the information obtained by each effort.

Respectfully submitted,

/s/
John F. Kennedy (Bar No. 413509)
Kennedy & Dolan
8601 Georgia Avenue
Suite 910
Silver Spring, MD 20910
(301) 608-3000

/s/
Patrick A. Malone (Bar No. 397142)
Stein, Mitchell & Mezines, LLP
1100 Connecticut Avenue, N.W.
Suite 1100
Washington, D.C. 20036
(202) 737-7777
(202) 296-8312 (facsimile)

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on the 18th day of October, 2006, copies of the foregoing were sent by electronic service or U.S. Mail to:

Allison Manger, Esq.
Thompson Coburn LLP
1909 K Street, N.W.
Suite 600
Washington, D.C. 20006-1167
email: AMANGER@Thompsoncoburn.com

Thomas R. Jayne, Esq.
Thompson Coburn, LLP
One US Bank Plaza
St. Louis, MO 63101
email: TJAYNE@thompsoncoburn.com

Terri S. Reiskin, Esq.
Eric Tew, Esq.
Wallace King Domike & Branson, PLLC
1050 Thomas Jefferson Street, N.W.
Suite 500
Washington, D.C. 20004
email: TReiskin@WallaceKing.com

Michael E. Blumenfeld, Esq.
Brown & Sheehan, LLP
The Tide Building, Suite 300
1010 Hull Street
Baltimore, MD 21230-5337
email: mblumenfeld@brownsheehan.com

Brian K. Telfair, Esq.
Womble Carlyle Sandridge & Rice, PLLC
8065 Leesburg Pike
Fourth Floor
Tysons Corner, VA 22182
email: BTelfair@wcsr.com

/s/
Patrick A. Malone